IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LILLIAN BOWENS, O/B/O A.T.B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:05cv164-SRW |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. Introduction.**

Lillian Bowens applied for supplemental security income benefits on behalf of her son, A.T.B. (the plaintiff), pursuant to Title XVI of the Social Security Act, alleging that the plaintiff was disabled. The application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). Pursuant to 28 U.S.C. § 636(c), both parties have consented to entry of a final judgment by the United States Magistrate Judge (docs. #12-13, filed January

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

30, 2006). Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 1382c(a)(3)(C)(1), a person under the age of 18 is disabled (and hence entitled to disability benefits) if the person "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[2] In determining whether a child is disabled, the Commissioner employs a sequential evaluation process. *See* 20 C.F.R. § 416.924.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of Impairments"), and also meet the twelve-month duration requirement?[3]

If the answer to each of the three questions is "yes," then the child is entitled to benefits.

In assessing whether the child's impairments are functionally equivalent to the listings, the Commissioner examines six areas of functioning: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4)

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] Part A of the Listing of Impairments applies to children and adults; Part B applies to children only. In dealing with a child's case, the Commissioner looks first to Part B, then to Part A. 20 C.F.R. 416.925(b); *Wilkinson v. Bowen*, 847 F.2d 660, 661 (11th Cir. 1987).

moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).  If the child has "marked" limitations in two of these areas, or "extreme" limitations in one of them, then the child will be found disabled. 20 C.F.R. § 416.926a(d).

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

A.  Introduction.  The plaintiff was thirteen years old at the time of the hearing before the

ALJ.[4]  Following the administrative hearing, the ALJ concluded that the plaintiff had two severe impairments: oppositional defiance disorder (ODD) and attention deficit hyperactivity disorder (ADHD).  Nonetheless, the ALJ concluded that the plaintiff was not disabled because his impairments did not meet or equal any listing in the Listing of Impairments.

B. Plaintiff's Claims.  The plaintiff presents the following issues for review: (1) Whether the ALJ improperly failed to consider the plaintiff's seizure disorder; (2) whether the ALJ improperly found that the plaintiff had only a "moderate" limitation in his ability to acquire and use information; and (3) whether the ALJ improperly found that the plaintiff had only a "moderate" limitation in his ability to interact with others.

### IV. Discussion

A.  Seizure Disorder

The plaintiff states that the A.L.J. "fails to consider [his] seizure disorder for which he is taking Depakote" (doc. #9, filed July 12, 2005, p. 7), apparently implying that the ALJ should have found this impairment "severe."  However, as noted by the ALJ, the record shows only one "possible" seizure episode (in December 1999) (Tr. 173), possibly attributed to food poisoning and with no previous history of seizures (Tr. 175).  The plaintiff's mother testified that he had had no further seizures (Tr. 299).[5]   The record thus shows that any seizure disorder either did not last for twelve months or was well controlled with medication,

---

[4] The hearing took place two days before his fourteenth birthday (Tr. 55, 295).

[5] The plaintiff apparently reported having three other seizures during the month following that episode (Tr. 206).  However, the plaintiff received two EEG's during that month, the second of which showed mild abnormalities (Tr. 206), and an MRI brain imaging that appeared "normal" (Tr. 203).  The record does not show that the plaintiff's impairment lasted more than twelve months, as required for consideration under 20 C.F.R. § 416.906.

and as such was not valid for consideration as "severe." *See Gibbs v. Barnhart*, 130 Fed. Appx. 426, 431 (11th Cir. 2005); 20 C.F.R. § 416.906.  The decision of the ALJ is not due to be reversed on this ground.

B.  Ability to Acquire and Use Information

The ALJ found that the plaintiff's impairments gave him a "moderate (less than marked)" limitation in his ability to acquire and use information.  The plaintiff argues that the ALJ erred in so finding.

Under 20 C.F.R. § 416.926a(e)(2)(iii), a limitation that can be measured by a standardized test is "marked" if valid, relevant test scores fall between two and three standard deviations below the mean.  As noted by the ALJ, the plaintiff received a psychological evaluation in 2000 that included intelligence testing (Tr. 27-28), specifically the Wechsler Intelligence Scale for Children (WISC-III) (Tr. 179-181).  WISC-III individual scores have a mean of 10 and a standard deviation of 3; WISC-III full scale, verbal, and performance IQ scores have a mean of 100 and a standard deviation of 15.  Randy W. Kamphaus, *Clinical Assessment of Children's Intelligence* 127 (Allyn & Bacon, 1993).  The plaintiff's individual scores were all above 4 (except for his arithmetic score, which was exactly 4),[6] and his full-scale, verbal, and performance IQ scores were 80, 79, and 84 (Tr. 181).  Thus, none of his

---

[6] 20 C.F.R. §§ 416.926a(g)(2)(iv) and (g)(3) describe the category of "acquiring and using information" in more detail as applied to the plaintiff (who was almost ten years old at the time of the test), and it covers abilities directly measured by the test, including information,  (in which the plaintiff scored 5), vocabulary (8), comprehension (6), similarities (8), and arithmetic (4) (Tr. 181).

scores fell more than two standard deviations below the mean.[7]  The ALJ, who relied on the examiner's report in reaching his determination, did not err in finding the limitation of the plaintiff's ability to acquire and use information "less than marked."

C.  Ability to Interact with Others

The ALJ found that the plaintiff's impairments gave him a "moderate (less than marked)" limitation in his ability to interact with others.  The plaintiff argues that the ALJ erred in so finding.

A limitation is "marked" if the claimant's impairments "interfere[] seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. 416.926a(e)(2). Under 20 C.F.R. § 416.924a(i)(3)(ii)-(iv), a child might have a marked limitation in his ability to interact with others if he had no close friends near his own age, avoided or withdrew from people he knew, or had difficulty playing games or sports with rules.  Based on the plaintiff's own testimony, the ALJ noted that the plaintiff had several friends, including a girlfriend (Tr. 27, 309, 312), and had gotten into trouble at school for talking too much with his friends (Tr. 27, 310).

Based on the plaintiff's mother's testimony (Tr. 28, 302) the ALJ found that the plaintiff played basketball and football.  The plaintiff argues that the ALJ erred, and that the

---

[7] The court further notes that, according to the examiner, the plaintiff was "probably capable of performing at higher levels" and of "controlling his behavior better and performing better in the classroom" (Tr. 26, 181).  A second examiner - with whom the plaintiff achieved much lower scores - likewise noted that the plaintiff "put forth minimal effort and oppositional behavior," so that his score did not reflect his full capabilities (Tr. 250).  As noted by the ALJ (Tr. 28-29), the ALJ had to assess the plaintiff's *ability*, and not merely his performance, in determining whether he was disabled.

record lacks "any indication that A.T.B. is able to engage in team sports on a regular basis" (doc. #9, p. 8).  The relevant testimony is as follows:

> Q [ALJ]: Does [the plaintiff] go out and play basketball with the neighbor kids or football or –
> A [Plaintiff's mother]: Oh, something like that.
> Q: Okay.  Can he participate in team activities with them?
> A: Sometimes.  Sometime he don't – I don't know what –
> Q: And when you say sometime then, why wouldn't he be able to do that?
> A: Because he did it sometime.  He does get upset and want things to go his way.
> Q: Alright.  So as long as things are going his way, there's no problem?
> A: Yeah.

(Tr. 302-03).  The ALJ also noted the plaintiff's desire to play football when he returned home from school (Tr. 27, 312) and school records showing that he participated in PE (Tr. 25, 162-63).  This evidence (which the ALJ accepted) does not unequivocally show that the plaintiff played football and basketball, though it does show he took part in team activities of some kind with variable success.   The court does not read the ALJ's opinion as saying that the plaintiff successfully played team sports "on a regular basis," but only as taking the fact that he could play such sports at all into consideration in concluding that the plaintiff did not have a "marked" difficulty in his ability to interact with others.[8]

The ALJ also found that the plaintiff, who took part in the Big Brothers Home Away From Home program, had improved under the influence of this program.  The ALJ wrote:

---

[8] The ALJ's words were, "The mother also testifies that they [sic] claimant plays basketball and football, activities which (apart from wheelchair basketball) are not customarily associated with the 'disabled'" (Tr. 28).

7

> It appears that the Big Brothers program is helping him. The claimant himself testified that he is keeping up in school, that he keeps his room straightened up, that he cleans the game room and does other chores and that he gets along with the other kids at the school and with his teachers...

(Tr. 28). The plaintiff did indeed so testify (Tr. 306-08). The plaintiff objects to this finding because the record contains a single monthly report from Big Brothers which showed that his behavior took "a turn for the worse" in March as compared to February 2004 (Tr. 268), though this report also showed that the plaintiff was receiving individual and group counseling to correct his misbehavior (Tr. 270). The report is not incompatible with the plaintiff's testimony, which took place in April 2004 (Tr. 293) and which suggested that his behavior had indeed improved (Tr. 306-08). The ALJ was fully entitled to credit the plaintiff's testimony as to his own behavior, and to make use of it in his analysis. *See* 20 C.F.R. § 416.912(b)(3).

Furthermore, any error in the ALJ's determination that the plaintiff had a "moderate (less than marked)" limitation in his ability to interact with others was harmless, because the evidence does not support an "extreme" limitation in this area, and because the plaintiff would have to have "marked" limitations in two of the six functional categories listed in 20 C.F.R. § 416.926a(b)(1) in order to be found disabled. As shown above, the ALJ did not err in finding a less than marked limitation in the plaintiff's ability to acquire and use information, and neither the plaintiff's brief nor the court's independent review of the record shows that the ALJ erred in finding the plaintiff's limitations less than marked in the other four categories. The decision of the ALJ is not due to be reversed on this ground.

8

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is due to be affirmed.

A separate order will issue.

DONE, this 24th day of January, 2007.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE